# STATE EX REL. GEORGE F. MILLER v. JULIUS J. REITER.[2]

## August 2, 1918.

## No. 20,962.

**Pleading — answer did not state a defense — procedure.**

1. The trial court sustained a demurrer to a portion of an answer and struck out the balance as sham and frivolous. The answer did not state a defense. Whether or not the practice followed in disposing of it was correct is not important.

**Intoxicating liquor — signature of mayor to license.**

2. In the city of Rochester liquor licenses are granted by the city council. The mayor is required to sign all licenses, but he has no option to refuse to sign a license regularly granted by the council.

**Same — discretion of city council not subject to review.**

3. The issuance of a license is a matter calling for the exercise of judgment and discretion on the part of the council. Their discretion cannot be controlled or reviewed, nor can the mayor or the court dictate as to the manner or the fulness of their investigation.

**Same — fitness of applicant for license.**

4. The character, record, and fitness of the applicant for a license are matters for the council to pass upon.

**Same — surety on bond — statute inapplicable to surety company.**

5. A surety company is not subject to the provision of the statute that no person already a surety on a license bond shall be accepted as a surety on another.

**Same — authorization of company matter of defense.**

6. It was not incumbent on plaintiff to plead that the surety company had obtained from the insurance commissioner a certificate of authority to do business. If it had not done so such fact was matter of defense.

Upon the relation of George F. Miller, the district court for Olmsted county granted its alternative writ of mandamus directed to Julius J. Reiter, commanding him as mayor of the city of Rochester to sign the license permitting relator to sell intoxicating liquors at the place specified in relator's application to the common council of that city. Relator de-

[1]Reported in 168 N. W. 714.

murred to sections 4 and 5 of the answer. The demurrer was sustained, Callaghan, J. The motion of relator to strike out the answer as sham and frivolous was granted, and judgment ordered granting a peremptory writ. From the judgment entered pursuant to the order for judgment, respondent appealed. Affirmed.

*Fraser & Fraser* and *Frederic A. Pike,* for appellant.

*George W. Granger, W. B. Richardson* and *Edward Lees,* for respondent.

HALLAM, J.

At the last election the city of Rochester voted to license liquor selling and the city council granted a license to relator. The mayor refused to sign. This proceeding in mandamus was commenced to compel him to do so.

Defendant answered admitting the foregoing facts and alleged, in section 4, that the city council refused to investigate relator's character or his record, failed to determine that he was of good moral character or otherwise qualified to hold a license, and in section 5 that relator is not a person of good moral character, that within one year he had knowingly violated the laws of Minnesota and the ordinances of Rochester relative to the sale of liquor. In section 6 it is alleged that relator's bond was executed by a surety company already a surety on other license bonds.

1. Relator demurred to sections 4 and 5 of the answer and the demurrer was sustained. Relator then moved to strike out the remainder of the answer as sham and frivolous, and this motion was granted and judgment was entered as prayed by the relator. It may be doubted whether the practice followed was regular, but if the answer stated no defense there will be no profit in concerning ourselves with the manner in which the court disposed of it. In our opinion the answer did not state a defense.

2. The statute provides that "licenses for the sale of liquor in municipalities may be granted by the council thereof." G. S. 1913, § 3114. By the Rochester city charter the mayor is required to "sign all * * * licenses * * * granted by the common council." Section 29. The granting of the license is the business of the council. The mayor has no veto power. If the council, proceeding in a lawful man-

ner, grants a license, the mayor has no option in the matter. The law commands him to sign all licenses granted by the body authorized to grant licenses, namely, the city council. Downey v. City of Red Wing, 121 Minn. 348, 141 N. W. 495; Braconier v. Packard, 136 Mass. 50; Schade v. Russell, 131 Mo. App. 638, 110 S. W. 667; 1 Woolen and Thornton, Intox. Liquors, § 400; Joyce, Intox. Liquors, § 282.

3. Complaint is made that the city council did not make proper investigation of the propriety of issuance of this license. The issuance of the license was a matter that called for the exercise of the council's judgment and discretion. State v. Common Council of City of Northfield, 94 Minn. 81, 101 N. W. 1063. Their discretion cannot be controlled. It is not subject to review. Neither can the mayor or the court dictate as to the fulness of their investigation. Their responsibility as to such matters is to the people who elected them to office.

4. It is said the relator is ineligible to run a saloon, because not a person of good moral character, and because within one year next preceding the filing of his application he knowingly violated the laws of the state and the ordinances of the city relating to the sale of liquor. These are some of the questions on which the city council was to pass judgment in determining the question of the applicant's fitness. The council must be considered as having determined these questions adversely to defendant's contention. Neither the mayor nor the court can try this question anew. If the applicant had been convicted of violation of law so that the determination of the council was wrong as a matter of law, a different question might be presented.

5. The contention is made that a surety company can become surety on but one liquor dealer's bond. We do not so understand the law. Before the days of surety company bonds, a law was passed providing that "no person already a surety on a license bond shall be accepted as a surety on another." Laws 1887, c. 6, § 1; G. S. 1913, §§ 3116, 3117.

In 1893 the law was passed authorizing surety companies to become sureties on bonds and provided: "Whenever any bond * * * is by law * * * required * * * any and all municipalities * * * required or permitted to accept or approve of the sufficiency of any such bonds * * * may * * * accept such bond * * * and approve the same whenever the same is executed * * * solely

by a corporation authorized * * * to execute * * * bonds * * *; and the execution of the same * * * shall be sufficient when executed * * * solely by such company * * * and shall be * * * compliance with every requirement of every law * * * that such bond * * * shall be executed by one surety or by two or more sureties, or that such sureties shall be residents or householders or freeholders or both." Laws 1893, c. 42; G. S. 1913, § 8235.

The provision of the law of 1887 that no person shall be surety on more than one license bond, at the time of its passage, applied only to personal sureties, for no other sort of surety was then known. In our opinion no intent can be found to extend that restriction to the corporation sureties later authorized by the act of 1893. The word person may include corporation (G. S. 1913, § 9412 [2]), but whether it does or not is matter of intent. The intent is not here.

6. The statute provides that no corporation shall be accepted as a surety, unless it hold the certificate of the insurance commissioner showing that it is authorized to contract as such. G. S. 1913, § 8235. Defendant urges that no compliance with this statute has been shown. Neither is there any showing to the contrary. Noncompliance with this law is matter of defense. Fidelity & Casualty Co. of New York v. Eickhoff, 63 Minn. 170, 177, 65 N. W. 351, 30 L.R.A. 586, 56 Am. St. 464; Langworthy v. Garding, 74 Minn. 325, 77 N. W. 207; State v. Murphy, 113 Minn. 405, 129 N. W. 850.

Affirmed.